# Illinois Official Reports

## Appellate Court

*Calabrese v. Benitez*, 2015 IL App (3d) 130827

| | |
|---|---|
| Appellate Court Caption | AMANDA CALABRESE, Plaintiff-Appellee, v. PABLO LOPEZ BENITEZ, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0827 |
| Filed | January 16, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from a verdict for plaintiff in an action for the injuries she suffered when defendant reversed his car without looking back and struck her, a pedestrian, the verdict for plaintiff was affirmed over defendant's contentions that the trial court erred in allowing plaintiff to use undisclosed X-ray films during the trial, denying defendant's request to depose plaintiff's chiropractor and in denying his motion for a new trial based on the trial court's bias, where defendant waived the issues and where the trial judge's remarks cited by defendant as evidence of bias did not display any favoritism, and they were made after the trial, basically in an attempt to educate a young trial counsel on the realities of trial practice. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 11-L-491; the Hon. Susan T. O'Leary, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Jamie Shimer (argued), of Fabrizio, Hanson, Peyla & Kawinski, P.C.,
of Joliet, for appellant.

Stephen M. Brandenburg (argued), of Radogno, Cameli & Hoag, P.C.,
of Chicago, for appellee.

Panel
JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Presiding Justice McDade and Justice Holdridge concurred in the judgment and opinion.

**OPINION**

¶ 1    A Will County jury awarded plaintiff, Amanda Calabrese, $47,899, after finding that defendant, Pablo Lopez Benitez, negligently operated his vehicle and injured plaintiff. Prior to trial, the court denied defendant's motion for leave of court to depose plaintiff's expert witness. At trial, the court admitted X-ray films into evidence without objection. Defendant had not viewed the X-ray films and reports prior to trial. Defendant filed a posttrial motion, alleging only that the court erred by admitting X-ray films at trial; the court denied defendant's motion.

¶ 2    Defendant appeals, claiming the trial court erred by: (1) allowing plaintiff to utilize X-ray films during trial; and (2) denying defendant's request to depose plaintiff's treating chiropractor prior to trial. Defendant also argues that he is entitled to a new trial due to the trial court's bias. For the following reasons, we affirm.

¶ 3                              BACKGROUND

¶ 4    Plaintiff filed a complaint alleging defendant caused her injuries while negligently driving his automobile. Prior to trial, defendant served plaintiff with written discovery, including interrogatories pursuant to Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) and requests for production pursuant to Illinois Supreme Court Rule 214 (eff. Jan. 1, 1996). Defendant's Rule 213(f) interrogatories included the following:

"5. Did any witnesses at any time prepare any notes, memoranda, summaries or other writings in connection with this matter? If so, (a) identify each such writing; and (b) pursuant to Supreme Court Rule 214, produce legible copies of all such writings.
        ***

7. Identify each treating physician or health care provider known to plaintiff, plaintiff's attorney, or anyone acting on behalf of the plaintiff, who has stated an opinion, directly or indirectly, expressly or impliedly, favorable or unfavorable or neutral, regarding the conduct of any plaintiff, the cause of plaintiff's alleged injuries and/or the prognosis of life expectancy of the person alleged to have been injured. State the opinion of each, dates of treatment and location of treatment."

Defendant served plaintiff with additional Rule 213 interrogatories, including:

"5. With regard to your injuries, state: (c) the name and address of each person and/or laboratory taking any x-ray, MRI and/or other radiological tests of you."

Defendant's Rule 214 request for production included:

"4. All data as to the physical or mental condition of each Plaintiff prior and subsequent to the alleged occurrence ***."

¶ 5 Plaintiff disclosed that Dr. Dahlager of Bolingbrook Family Chiropractic treated her. Plaintiff responded that she planned to call Dahlager at trial to testify regarding his treatment and interpretation of the various diagnostic studies. Dahlager administered diagnostic studies to plaintiff, including X-ray films. Plaintiff produced medical bills and health insurance forms in response to defendant's Rule 214 requests.

¶ 6 In October of 2011, defendant subpoenaed all of plaintiff's medical records from all of her disclosed treaters, including Dahlager. Dahlager did not include X-ray films in materials produced pursuant to the subpoena.

¶ 7 During her deposition, plaintiff testified that Dahlager took radiographs of her. On three separate occasions, following plaintiff's deposition, defendant subpoenaed plaintiff's records from Dahlager. The language of the subpoenas varied, but each: (1) included a request for "any and all records and reports"; and (2) specified a noninclusive list consisting of items such as X-ray films or other radiological reports. The coversheet accompanying each subpoena instructed the facility to produce records "including but not limited to charts, notes, nurses' notes, lab reports, correspondence and memoranda regarding the plaintiff." The coversheet also instructed the facility to call defendant before duplicating any X-rays. Dahlager neither produced X-ray films in response to these requests nor called defendant to discuss duplication of X-ray films. Defendant never filed a motion to compel production of the X-ray films and reports.

¶ 8 Prior to trial, on April 17, 2013, defendant filed a motion requesting leave of the court to take the discovery deposition of Dahlager. The court denied defendant's request. On October 10, 2012, the court ordered defendant to complete depositions of all independent expert witnesses on or before December 10, 2012. Moreover, on January 25, 2013, the court entered an order stating defendant waived his right to depose plaintiff's independent expert witnesses.

¶ 9 On the morning of the first day of trial, defendant filed a motion *in limine* to bar any testimony concerning X-ray films or other diagnostic imaging not previously disclosed by plaintiff or produced responsive to any subpoena. In response, plaintiff indicated that she did not attempt to obtain her X-ray films from Dahlager, but believed Dahlager would bring X-ray films with him to court, if any existed. Plaintiff also planned to solicit opinions about the X-ray films and reports. The court denied defendant's motion.

¶ 10 Dahlager brought X-ray films with him to trial. Plaintiff elicited testimony from Dahlager concerning the X-ray films and reports; Dahlager used the X-ray films as substantive evidence

of a spinal injury. At trial, the defendant did not object to the admission of the X-ray films or Dahlager's testimony. Plaintiff's counsel moved to admit the X-rays and other exhibits:

> "MR. CAMELI [plaintiff's attorney]: Your Honor, with that I move into–admission of Exhibits 18, 19 and 20.
>
> THE COURT: Any objection?
>
> MS. SHIMER [defense attorney]: I have not seen them.
>
> THE COURT: 18, 19, 20, the x-rays, the bills and the medical records.
>
> MR. CAMELI: 18 is the medical records, 19 is the x-rays, 20 is the component of the bill of Dr. Dahlager.
>
> MS. SHIMER: No objection to 18 and 19. I would just have an objection to 20. I would like to see it."

¶ 11 The court admitted exhibit No. 20 without objection after defense counsel reviewed the document.

¶ 12 The jury returned a verdict in favor of plaintiff. After the trial court entered judgment, defendant filed a posttrial motion for a new trial, claiming that the trial court erred in allowing plaintiff to use the X-ray films at trial. The court denied defendant's motion.

¶ 13 Defendant appeals.

¶ 14 ANALYSIS

¶ 15 I. Testimony Concerning Undisclosed X-rays

¶ 16 Defendant argues that the trial court abused its discretion by allowing plaintiff to utilize X-ray films during trial. Specifically, defendant argues: (1) plaintiff violated the discovery rules when neither plaintiff nor plaintiff's expert witness produced the X-ray films; and (2) the court should have excluded such evidence to remedy the discovery violation. Plaintiff argues that defendant waived the right to object to the use or admission of the X-ray films on appeal; defendant did not object to the introduction of the X-ray films at trial. Defendant counters that his motion *in limine* preserved the issue.

¶ 17 Failure to timely object *and* raise the issue in a posttrial motion results in forfeiture of the issue on appeal. *People v. Johnson*, 218 Ill. 2d 125, 138 (2005) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). A motion *in limine* does not preserve an issue for review. *Simmons v. Garces*, 198 Ill. 2d 541, 569 (2002) (citing *Brown v. Baker*, 284 Ill. App. 3d 401, 406 (1996)). When the court denies a motion *in limine*, the party must make an objection at trial to preserve the issue on appeal. *Simmons*, 198 Ill. 2d at 569 (citing *Brown*, 284 Ill. App. 3d at 406).

¶ 18 Prior to trial, defendant presented the court with a motion *in limine* to bar the admission of X-ray films and testimony concerning any radiographs or other diagnostic imaging. Plaintiff responded that she did not attempt to obtain her X-ray films; Dahlager would bring X-ray films with him to court. The court denied defendant's motion. During trial, defense counsel did not object to the admission of the X-ray films or Dahlager's testimony concerning the radiographs. To the contrary, defense counsel affirmatively stated "no objection" when plaintiff moved to admit the X-ray films. By stating "no objection" to the admission of the radiographs, defendant affirmatively abandoned any objection in the motion *in limine*. Therefore, we find the issue waived.

## II. Opportunity to Depose Plaintiff's Treating Physician

Defendant claims that the trial court erred by denying his request to depose plaintiff's treating chiropractor. Plaintiff argues that defendant waived this issue, too, by failing to address it in a posttrial motion. We agree.

If a party fails to raise an issue in its posttrial motion, the issue is waived on appeal. *Jackson v. Seib*, 372 Ill. App. 3d 1061, 1076 (2007). A posttrial motion must set forth specific grounds on which the court erred. *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 348 (1980).

In his posttrial motion, defendant failed to argue that the trial court erred in denying his request to depose plaintiff's witness. To the contrary, defendant stated that he made a strategic and cost-effective decision not to depose Dahlager. The only reference to the court's denial of his motion in defendant's posttrial motion is a footnote simply stating that later defendant filed a motion requesting leave of court to depose Dahlager, which the court denied. We find the issue waived.

## III. New Trial Based on Court's Bias

Defendant argues that trial court erred when it denied his posttrial motion due to the fact that the trial court exhibited bias when ruling on his motion. The court, says defendant, did not agree with the defense strategy and ultimately based its decision on its disagreement. Defendant supports his position by highlighting the following statements:

> "THE COURT: Well, let me just say the jury clearly did not make an error in this case. You know, this case was–I was actually rather shocked that negligence was not admitted when the plaintiff–when the defendant put–who had just gotten his license, put his vehicle in reverse and backed up without looking and struck a pedestrian in a crosswalk. I mean, I don't know how clear liability could have been. So at any rate. Go ahead. Your [defendant's] response.
>
> * * *
>
> *** [A]ssuming that there was error in admitting that [X-ray], I think that the verdict would have been the same. ***
>
> That's my–you know, I try a lot of cases, and I have had some large verdicts recently, and sometimes when I see cases where the position that's taken by the defense counsel is such that in my view reasonable people will not agree with it, you're inviting a verdict, and potentially a larger verdict than you might otherwise had your position been more reasonable.
>
> I just–frankly, I have to say in this case I don't understand why liability was contested in this case. You know, I told you that. *** I mean, there was no basis that I could imagine that liability was not clear in this case. ***
>
> What the jury did was obviously between the 12 of them. That was just my perception. And I, frankly, told you that I thought that that was not a wise decision to proceed with, you know, arguing that there was no negligence in this case because I just couldn't fathom what possible–how that could not be negligent. ***
>
> So to just–I mean, it was probably one of the most clear-cut cases in my hundreds of cases of liability. ***

> I think that the verdict, whether or not this X-ray was shown to the jury or not, I think would have been the same. That's just my opinion."

¶ 25 Our supreme court addressed the issue of judicial bias in *Eychaner v. Gross*, 202 Ill. 2d 228 (2002). A trial judge is presumed to be impartial; the party alleging prejudice bears the burden to overcome the presumption. *Id.* at 280. "[T]he party making the charge of prejudice must present evidence of prejudicial trial conduct and evidence of the judge's personal bias." *Id.* Personal bias can stem from an extrajudicial source or from facts adduced or events occurring at trial. *Id.* Our supreme court adopted the following statement from the United States Supreme Court:

> " '[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.' " (Emphases in original.) *Id.* at 281 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

¶ 26 The trial court's statements, which defendant offers as evidence of judicial bias, do not display a deep-seated favoritism that would make a fair judgment impossible. Furthermore, defendant does not offer any evidence proving that judicial bias stemmed from an outside source. To the contrary, the judge based her opinion on specific facts of the current proceeding. The judge opined that liability was clear based on the fact that defendant struck a pedestrian when he reversed his car without looking. Moreover, the court made such comments after trial; thus, the court's statements could not have prejudiced the defense. The court's statements amount to nothing more than the trial judge attempting to educate a young attorney on the realities of trial practice. Defendant is not entitled to a new trial.

¶ 27                                    CONCLUSION
¶ 28 For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 29 Affirmed.