NOTICE

Decision filed 04/16/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240387-U

NO. 5-24-0387

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| MICHIAL McELHANEY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Moultrie County. |
| | ) | |
| v. | ) | No. 17-L-2 |
| | ) | |
| GLENN DUST, M.D., | ) | Honorable |
| | ) | Jeremy J. Richey, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justice Cates and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The jury verdict is affirmed where plaintiff failed to properly preserve his appeal issues.

¶ 2    Plaintiff, Michial McElhaney, appeals the November 9, 2023, jury verdict in favor of defendant and the trial court's February 20, 2024, denial of his posttrial motion. He argues that the trial court erred in its evidentiary rulings, resulting in the erroneous exclusion of expert testimony. For the following reasons, we affirm the trial court's order.

¶ 3                                I. BACKGROUND

¶ 4    On April 12, 2017, plaintiff filed a complaint against defendant, Dr. Glenn Dust, for professional negligence. Therein, plaintiff alleged that on April 30, 2014, he advised defendant of a lump in his breast. Defendant measured the lump at 1.5 centimeters, noted it was a hard lesion,

1

but offered no further treatment or analysis at that time except to tell plaintiff to keep an eye on it and let him know if anything changed. Neither plaintiff nor defendant mentioned the mass at any other visits that year. On April 22, 2015, when plaintiff appeared for a follow up appointment for his diabetes, he mentioned that the lump now included his areola. Defendant remeasured the mass, noted that it remained 1.5 centimeters, but this time referred plaintiff to a surgeon, who eventually diagnosed stage II breast cancer. Following a right mastectomy, the total size of the mass was found to be 2.3 centimeters and one lymph node, out of nine tested, was positive for cancer. Thereafter, plaintiff received chemotherapy and radiation.

¶ 5     Plaintiff, who was 39 years old in April 2014, alleged that he had a previous diagnosis of lymphoma when he was 13 years old which required chemotherapy and total body radiation. He alleged that defendant was negligent in failing to provide care, treatment, or testing in April 2014; failing to reexamine the mass on the three later visits; delaying a diagnosis of breast cancer for over a year; failing to address the previous history of lymphoma, the risk of reoccurrence, or increased risk of secondary cancer; and failing to provide a mammogram or referral to a surgeon for proper treatment. Plaintiff also alleged that due to defendant's negligence, the stage I tumor, which he "more likely than not" had on April 30, 2014, was allowed to grow into the stage II-B tumor diagnosed in June 2015 which had a lower five-year survival rate (70%) than if diagnosed at stage I (95% five-year survival rate). Plaintiff further alleged that the lymph node invasion more than likely would have been prevented, and neither chemotherapy nor radiation would have been required. As a result of the alleged negligence, plaintiff alleged that he experienced pain and suffering, loss of enjoyment of life, emotional distress, a shortened life expectancy, lost wages, and medical bills. A second count was filed against codefendant, Sullivan Family Care, LLC, who

was defendant's employer.[1] The complaint was supported by a certificate of merit issued by Dr. Peter Sherer. On May 12, 2017, defendant filed an answer denying most of the allegations. Discovery took place over the next six years and the case moved toward a jury trial scheduled for November 2, 2023.

¶ 6     On September 5, 2023, plaintiff filed a motion *in limine*, requesting prohibitions (Nos. 1-31) regulating both plaintiff and defendant at the trial. The same day, defendant filed five separate motions *in limine* requesting prohibition of 14 actions that included bolstering (Nos. 32-34), hearsay (Nos. 35-37), personal preference (Nos. 38-40), relevance (No. 41), and speculation (Nos. 42-45). Relevant here were motions *in limine* numbered 42, 43, and 45.

¶ 7     Motion No. 42 stated,

> "Plaintiff and his witnesses, including plaintiff's expert, Peter Sherer, M.D., should not be permitted to offer testimony based in speculation. Allowing witnesses to offer speculative testimony invites the jury to speculate as well. *** Dr. Sherer has asserted assumptions regarding timing of when Mr. McElhaney had liver fibrosis and progression based on his own admitted speculation. This testimony invites the jury to speculate as to the timing of the onset of liver fibrosis and progress, and it should not be allowed into evidence."

The motion cited Dr. Sherer's testimony in his second supplemental discovery deposition testimony taken on February 21, 2019.

¶ 8     Motion No. 43 stated,

> "Dr. Sherer offered several opinions on his belief regarding the size and character of the mass in 2014 versus its size and character in 2015. His testimony regarding how large the

[1]Plaintiff moved to voluntarily dismiss the codefendant at trial and the motion was granted by the trial court. Codefendant is not addressed in this appeal.

mass was in 2014, its character in terms of spiculations, and rate of growth in 2014 is not based on any fact, but instead based on Dr. Sherer's conjecture and speculation. *** Dr. Sherer admits he has no way of knowing the size and character of the mass in 2014. At a later deposition, Dr. Sherer *** expanded on his previous speculative opinions regarding the size and character of the mass in 2014. *** Dr. Sherer's response in 2018 and his testimony in 2022 both indicate he has overlooked that he cannot testify to a reasonable degree of medical certainty that the mass, which was palpated in 2014 to be the same size it was palpated in 2015, was *** at a different stage without speculation. Further, he cannot testify as to whether a lymph node was involved in 2014, and if not, when a lymph node became involved with the mass without open speculation. This testimony invites the jury to speculate regarding node involvement, size, and character of the mass, and it should not be admitted into evidence at trial."

The motion cited statements from Dr. Sherer's August 16, 2018, discovery deposition. Therein, Dr. Sherer was asked if he was assuming plaintiff's tumor was 1.5 centimeters on April 30, 2014. He responded by stating, "We have no way of knowing. I assume so." The motion also cited Dr. Sherer's third supplemental discovery deposition taken on October 25, 2022.

¶ 9    Motion No. 45 stated,

"Dr. Sherer speculated as to whether radiation therapy would be recommended or necessary in 2014; however, there is not enough information to offer that opinion to a reasonable degree of medical certainty. Part of Dr. Sherer's basis for his opinion in that regard is the mistaken notion that Dr. Cho, plaintiff's treating radiation oncologist had described the Plaintiff's mass as being Stage I in 2014. Dr. Cho said nothing of the sort. *** Dr. Sherer's opinion regarding whether the Plaintiff would have needed radiation

4

treatment in 2014 is based entirely in speculation. First, Dr. Sherer speculates that there would not have been an involved lymph node by the time the mass was resected following its discovery in April of 2014. Then Dr. Sherer attributes to Dr. Cho an opinion he did not offer, that the mass was definitively Stage I at the time of its initial discovery. Dr. Cho, the radiation oncologist treating the Plaintiff, declined to offer an opinion that radiation would not have been recommended in the hypothetical situation of a Stage I mass without node involvement in 2014. Dr. Sherer's attribution of the basis for his opinions in Dr. Cho's testimony is nothing more than a smoke screen to cover his own rampant speculation. The basis for Dr. Sherer's opinion that radiation therapy would not have been recommended if the Plaintiff's mass was treated in 2014 is entirely speculative, and therefore, his testimony in that regard is not sufficiently certain to be admitted into evidence."

¶ 10    On September 19, 2023, plaintiff filed a response to the motions *in limine* regarding speculation. As to the liver damage addressed in No. 42, plaintiff stated that he was not planning to offer expert testimony regarding liver disease or the timing and staging of fibrosis. With regard to No. 43 and No. 45 (which he classified as cancer size, staging, and difference in treatment, respectively), he listed 18 statements made by Dr. Sherer in his August 16, 2018, deposition in which he opined that (1) the tumor was less than two centimeters based on its presentation in 2015; (2) the lymph node would not have been taken in 2014, based on its size in 2015 and the lack of other lymph node involvement; (3) the change in appearance would have been over a period of months and would not have happened suddenly; (4) the palpation size remained the same from 2014 to 2015, indicating that the tumor had not started growing faster yet; (5) the tumor would have been larger on excision if it was actually larger than two centimeters in 2014; (6) the treatment would have been different in 2014 than 2015, and plaintiff would not have needed chemotherapy

5

or radiation therapy; (7) plaintiff's tumor was not a "super-fast growing thing"; (8) plaintiff's tumor was aggressive because it involved the lymph nodes; (9) plaintiff would not have required radiation therapy in 2014 because he had no lymph node involvement and it was affixed to the skin, in 2014; (10) the stage of plaintiff's cancer would have been stage I in 2014, *i.e.*, a tumor less than two centimeters with negative lymph nodes, because in 2015, plaintiff was stage II B which was more than two centimeters with lymph node involvement; (11) plaintiff's cancer was a T2, N1, MO, which was "a TNM thing meaning tumor, node, and no metastasis"; and (12) plaintiff would not have had chemotherapy in 2014 because of negative lymph nodes and positive tumor under two centimeters.

¶ 11    Plaintiff argued, citing *Geers v. Brichta*, 248 Ill. App. 3d 398, 407 (1993), and *Mesick v. Johnson*, 141 Ill. App. 3d 195, 205 (1986), that a physician could testify as to what might or could have caused an injury despite any objection that the testimony was inconclusive as long as the opinion of the witness was based on facts assumed to be true and the trier of fact determined the facts and inferences to be drawn therefrom. He further argued, citing *Scassifero v. Glaser*, 333 Ill. App. 3d 846, 852 (2002), that an expert could testify as to the possible causes of injury based on facts assumed to be true. Plaintiff stated that Dr. Sherer testified based upon a reasonable degree of medical certainty that plaintiff had a much larger and more invasive cancer based not only on his education, training, and experience, but also on the objective findings of the cancer actually attaching to the nipple and causing the nipple to invert. He further stated that Dr. Sherer also testified regarding staging of the cancer and treatment of the cancer in positive terms, and this was not speculative testimony.

¶ 12    A hearing on the motions *in limine* was held on October 3, 2023. Despite previously indicating that No. 42 would not be an issue, plaintiff now argued against the motion *in limine*,

stating he would not be pushing the diabetes issue but would be pushing the fatty liver issue. After presenting argument, the court granted the motion "because that is calling for speculation." As to No. 43 involving size and characterization of the mass, the parties presented argument and the court stated that the issue should "be addressed at trial, because it depends on how exactly the evidence comes out." The court noted that, "[m]aybe it's fair to infer that it grew, but it's not fair to infer that it was a specific size" and again stated it should be addressed at trial. After even more argument, the court stated that it was going to reserve the issue because it needed more information, and an offer of proof may be needed. As to No. 45, the parties again presented argument, and the court stated it would take the issue of whether radiation would have been required in 2014 under advisement as well. On October 5, 2023, the court issued a docket entry stating,

> "Paragraph 45 of Defendant's Motion in Limine Regarding Speculation is taken out of advisement this date and GRANTED. Dr. Sherer may not offer an opinion that radiation therapy would not have been recommended if Plaintiff's mass was treated in 2014."

¶ 13    On October 16, 2023, plaintiff filed a motion to reconsider the court's decision on No. 45. Therein, plaintiff argued that opinions based on hypotheticals were proper as long as they were within the realm of direct or circumstantial evidence or were reasonable inferences from established facts. In support, plaintiff filed the full discovery deposition transcripts of defendant taken December 6, 2017, plaintiff taken on September 29, 2017, and Dr. Peter Sherer taken on August 16, 2018, along with the evidence depositions of Dr. Theresa Schwartz[2] taken on October 6, 2023, and Dr. Seong Cho[3] taken on October 11, 2023. Plaintiff requested that the court

---

[2] Dr. Schwartz was plaintiff's treating breast surgeon oncologist.
[3] Dr. Cho was plaintiff's treating radiologist.

7

"reconsider its previous decision and permit Dr. Sherer to join Dr. Schwartz in testifying that radiation therapy would not have been necessary if plaintiff's cancer had been addressed in 2014."

¶ 14    Defendant filed a response to the motion to reconsider on October 23, 2023, arguing that Dr. Sherer's opinion concerning radiation in 2014 was based on speculation regarding the absence of lymph node involvement in 2014 and was not appropriate for admissibility. In support, defendant cited *Reed v. Jackson Park Hospital Foundation*, 325 Ill. App. 3d 835, 844 (2001), which prohibited an expert witness from basing opinions on what could or might have occurred because, citing *Wiedenbeck v. Searle*, 385 Ill. App. 3d 289, 293 (2008), mere conclusions based on unsubstantiated speculation were irrelevant. Defendant argued that Dr. Sherer's opinion regarding the necessity of radiation therapy was based on conjecture rather than fact, noting that both Dr. Schwartz and Dr. Cho confirmed they did not know when the lymph node became involved. Defendant cited Dr. Schwartz's testimony during her October 6, 2023, evidence deposition at which time defendant asked, "Am I correct that you can't say to a reasonable degree of medical certainty when that lymph node became affected?" Dr. Schwartz responded by saying, "Correct." Similarly, Dr. Cho was asked during his October 11, 2023, evidence deposition, "[W]e talked a lot about [plaintiff's] lymph node being involved at the time of your treatment. Is it fair to say you don't know when that lymph node became involved with this mass?" Dr. Cho responded, "No, I don't."

¶ 15    Plaintiff filed a reply agreeing that an expert could not base opinions on what could or might have occurred where there was no evidentiary basis to do so, but disputed that the opinions of Drs. Sherer, Schwartz, and Cho had no direct or circumstantial basis to support them. It further argued that defendant's position was inconsistent based on its own expert's testimony regarding treatment modalities based on the 2014 information. Attached to the motion was defendant's Rule

213(f) disclosure related to Dr. Phillip Hoffman, the full transcript from Dr. Hoffman's January 20, 2023, discovery deposition, additional copies of Dr. Schwartz's October 6, 2023, and Dr. Cho's October 11, 2023, evidence depositions, and Dr. Dande's October 5, 2023, evidence deposition.

¶ 16    The parties presented their arguments to the court on October 25, 2023. At that time, the court asked plaintiff's counsel if there was a doctor that could say within a reasonable degree of medical certainty that the lymph nodes were or were not affected on the first date. Plaintiff's counsel stated that Drs. Sherer, Schwartz, and Cho could provide that information. The court acknowledged plaintiff's response but noted the evidence depositions from Drs. Schwartz and Cho, that denied their ability to determine when the lymph node became affected and stated that their depositions "seem to be suggesting otherwise." Plaintiff's attorney conceded that they "can't tell you the exact date" but they could say it was stage I in 2014.

¶ 17    The court stated it would allow plaintiff to file a supplement with the specific pages supporting his argument and would take the reconsideration under advisement until it reviewed those pages. Following the argument, plaintiff filed the supplemental documentation including four pages from Dr. Sherer's August 16, 2018, discovery deposition and three pages from Dr. Schwartz's October 2023 evidence deposition. Defendant filed 11 pages from the July 8, 2019, discovery deposition of plaintiff's treating oncologist, Dr. Christos Papageorgiou, who further agreed that it was "really hard to tell" when the lymph node became involved and testified that it could have been there on Day 1 and "it took a year to grow and grow outside the lymph node."

¶ 18    On October 26, 2023, the trial court issued a docket entry order taking plaintiff's motion to reconsider out of advisement and denying the motion. On October 27, 2023, plaintiff filed a supplemental motion *in limine* asking the court to bar testimony from defendant's expert based on related issues of mass size, lymph node involvement, and treatment.

¶ 19    Jury selection was completed on November 2, 2023, and defendant filed his response to plaintiff's supplemental motion *in limine*. A hearing was held on November 3, 2023, and the court granted paragraphs 1, 2, and 3 of the supplemental motion also precluding testimony regarding classification of the mass, radiation therapy, outcome and treatment modalities by defendant's expert. Thereafter, because portions of plaintiff's case-in-chief would be presented via evidence deposition testimony, the trial court issued its rulings on objections raised during Dr. Theresa Schwartz's and Dr. Seong Cho's evidence depositions so that the testimony could be redacted prior to its submission to the jury. At that time, the trial court found that some foundation objections were valid given that no foundation was provided in response to the objection and some objections based on speculation were valid.

¶ 20    The trial began on November 6, 2023. The first witness called was plaintiff's fiancée, Crystal Ashby. She testified about plaintiff's current cancer and treatment as well as his prior lymphoma. Following Ms. Ashby's testimony, plaintiff's counsel advised the court that he was going to read Dr. Schwartz's evidence deposition. Thereafter, the court advised the jury that evidence deposition testimony should be weighed the same as live testimony. After determining how the transcript would be read, the court called for a side bar to advise the parties that the court reporter would not be providing a transcript, and the transcript would need to be submitted. Thereafter, defendant's counsel advised the court that he and plaintiff's counsel "made further agreements since the pretrial hearing as to some additional redactions from the transcript" and plaintiff's counsel stated he would provide a copy of the transcript for the record. Plaintiff's counsel requested the court advise the jury that the witness was sworn, and the side bar was completed. The court advised the jury that Dr. Schwartz was sworn prior to giving her testimony

and thereafter, the redacted testimony of Dr. Schwartz was read. No objection to any of the court's previously issued rulings was presented either before or after the testimony was read.

¶ 21 Following a lunch break, the parties addressed treatises intended for use during Dr. Sherer and Dr. Hoffman's testimonies. Dr. Sherer was called to testify live. After testifying that he reviewed two depositions of Dr. Cho, a side bar was held to determine what additional materials Dr. Sherer reviewed prior to his trial testimony. It was determined that three evidence depositions, including those of Dr. Schwartz, Dr. Cho, and Dr. Dande, along with abstracts of the depositions, were provided to Dr. Sherer just prior to trial and defense counsel was not advised of the submission. Defense counsel requested Dr. Sherer be barred from testifying which the court found "extreme" and asked for other possible sanctions to which defendant requested a restriction on Dr. Sherer's testimony and plaintiff's counsel stated he did not "see any problem having him continue to testify as a standard of care witness." After further discussions and consideration of other possible sanctions, defendant's counsel agreed that Dr. Sherer's testimony could be "limited to the standard of care." The court stated that it would be taking a brief recess to review case law cited by counsel and returned to advise the parties that they would put Dr. Sherer back on the stand to inquire as to what he reviewed and how it may have affected his opinions. Dr. Sherer returned to the stand and was questioned about the items reviewed and how they affected his opinion. Following Dr. Sherer's testimony, the court addressed six factors for consideration and determined that a sanction was appropriate by allowing defendant to provide the same records to its counsel, admonishing plaintiff's counsel to be more careful in future trials and limiting Dr. Sherer's testimony to the standard of care. Following the issuance of the court's ruling, plaintiff's counsel admitted that he sent the materials, but it was late at night, and he was not thinking when he sent them. The court thanked plaintiff's counsel for his candor and stated it would allow plaintiff's

11

counsel to make an offer of proof regarding Dr. Sherer's stricken testimony and the parties agreed that the offer of proof would be made by Zoom with Dr. Sherer at 8:30 a.m. on Wednesday, November 8, 2023.

¶ 22    On November 7, 2023, plaintiff's counsel advised the court that it no longer wished to pursue an offer of proof related to the trial court's decision to limit Dr. Sherer's testimony solely to the standard of care. After the court again stated that counsel could "preserve your record." Counsel stated, "I don't see any benefit in doing his offer of proof." The court clarified as to whether plaintiff's counsel was withdrawing its request to make an offer of proof as to Dr. Sherer and counsel responded, "As to Dr. Sherer's yes."

¶ 23    Thereafter, plaintiff's counsel called defendant as an adverse witness. Following defendant's testimony, plaintiff advised that Dr. Dande's evidence deposition was going to be read. The court advised the jury that the witness was sworn, and Dr. Dande's evidence deposition was read. Prior to the lunch break, plaintiff's counsel submitted the transcripts for Dr. Dande and Dr. Schwartz's evidence depositions and defendant's counsel reviewed them to ensure they contained the rulings by the court. Defendant's counsel advised it had no issues with the transcripts, and they were admitted into the record. No objection was raised as to any redactions in either transcript.

¶ 24    Following a lunch break, Gayle Garmon, the plaintiff's mother, testified about her son's lymphoma treatment as a child, his current cancer, his current treatment, and his disability from the treatment. Following her testimony, plaintiff advised the court that the deposition of Dr. Cho was going to be read. The court advised the jury that the witness was under oath when the deposition was taken, and Dr. Cho's deposition was read to the jury. Following the reading, a side bar was taken to address questions on pages 22 and 23 of the transcript which were not redacted and defendant's counsel agreed that the questions related to the witness's previous conversation

12

with plaintiff's counsel were properly retained in the transcript. No objection as to the court's previous rulings on the objections was presented either before or after Dr. Cho's deposition was read. Thereafter, an objection related to plaintiff's potential testimony was addressed and Dr. Cho's deposition was admitted into the record. No objection to any of the court's November 3, 2023, rulings on the objections was made. Thereafter, plaintiff provided direct testimony addressing his cancer as a child, his childhood treatment of the cancer, finding the current mass, going to Dr. Dust, keeping an eye on the mass each month, having his nipple deform two weeks before his diabetes appointment with Dr. Dust in April 2015, and his treatment for cancer in 2015. The jury was released following plaintiff's initial testimony, and the parties addressed the remaining witnesses and possible jury instructions.

¶ 25    The trial resumed on November 8, 2023, and defendant's counsel addressed the email that resulted in the sanction of Dr. Sherer's testimony. The jury was brought in and defendant's counsel cross-examined plaintiff. Following this testimony, plaintiff rested. Defendant's counsel moved for a directed verdict which was denied. Dr. Weber, Dr. Bass, and defendant provided testimony. Following defendant's testimony, the jury was released, the parties addressed the proposed jury instructions, and plaintiff's counsel moved to voluntarily dismiss codefendant Sullivan Family Practice. The court granted the motion.

¶ 26    On November 9, 2023, the jury instructions were completed, Dr. Hoffman's testimony was presented, and defendant rested. Following closing arguments, the trial court read the jury instructions. After the jury was sent to deliberate, the court asked if either party wished to make any record, and both sides declined. An hour later, the jury returned with a general verdict in favor of Dr. Dust. Judgment was entered on November 20, 2023.

13

¶ 27    On December 18, 2023, plaintiff's counsel filed a posttrial motion. The motion alleged that the trial court erred in granting paragraph 45 of the motion *in limine* stating that the

> "pre-trial ruling declared that the evidence deposition of both Dr. Peter Sherer and Dr. Theresa Schwartz that based upon a reasonable degree of medical certainty, Plaintiff's cancer would have most likely been a stage I instead of a stage 2 in 2014 and would not have required radiation therapy in 2014 constituted inadmissible speculation by Dr. Sherer and Dr. Schwartz."

The motion further claimed that because testimony by Dr. Sherer and Dr. Schwartz was stricken, the testimony of Dr. Cho was also stricken. It claimed that Dr. Schwartz's testimony, that was "based on the size of the mass the year prior," stated that if she performed the surgery in May or June 2014 and the case was then at stage I with negative margins and no lymph node involvement or vascular invasion, it was unlikely that radiation therapy would have been considered. The motion further cited additional Dr. Schwartz's testimony. That testimony stated that if she had performed her surgery in May or June of 2014—instead of June 2015—that if the mass was 1.5 centimeters the year prior and had no node involvement then, based upon a reasonable degree of medical certainty, the assumption would be that plaintiff would have been a stage IA. The motion argued that since Dr. Schwartz's testimony was based on fact, it should not have been stricken as speculative. It argued that Dr. Sherer's testimony should not have been stricken as speculative pursuant to motion *in limine* No. 45 because it too was based on fact. It then argued that cancer stages were not speculative based on defendant's testimony in a different case. Finally, the motion claimed that by granting motion *in limine* No. 45, the "case was effectively lost before the trial even started" and that the trial court and defendant's counsel substituted their opinions for that of the medical expert.

14

¶ 28    Defendant responded on January 16, 2024, noting that plaintiff submitted a general verdict to the jury that encompassed all the burdens of proof, and therefore no evidence was available to show that the jury's verdict was based solely on causation. It further disputed plaintiff's summary of the opinions that were excluded noting that Dr. Sherer's deposition testimony was not part of the record, and no offer of proof was made regarding that testimony. Defendant further argued that Dr. Schwartz specifically testified that she could not say to a reasonable degree of medical certainty when the one lymph node became affected and therefore any testimony as to the stage of plaintiff's cancer in 2014—which required a positive lymph node—was speculative. Finally, defendant argued that even if the court erred by barring Dr. Sherer's testimony under motion *in limine* No. 45, Dr. Sherer was also barred from offering that testimony due to the discovery sanction.

¶ 29    Plaintiff filed a reply on February 13, 2024, citing *Stricklin v. Chapman*, 197 Ill. App. 3d 385, 388 (1990), and *Redmon v. Austin*, 188 Ill. App. 3d 220, 226-27 (1989), that a general verdict could be reversed if the exclusion of evidence prejudiced a party, or the result of the trial was materially affected. As to Dr. Schwartz's testimony, plaintiff argued that her testimony was not speculative. Plaintiff agreed that he accepted the sanction as to Dr. Sherer's testimony but argued, citing *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002), that no offer of proof was necessary because Dr. Schwartz's testimony was in the record. The parties presented argument on February 20, 2024, and the court denied the motion.

¶ 30    Plaintiff timely appealed. His notice of appeal listed the trial court's orders of: (1) October 5, 2023, striking as speculative the evidence deposition opinion testimony of Dr. Schwartz that based upon a reasonable degree of medical certainty had she performed the surgery in June 2014 instead of June 2015, it was more likely than not that the tumor would have been a stage 1A and radiation therapy would likely not have been needed; (2) October 26, 2023, denying plaintiff's

15

motion to reconsider the October 5, 2023, order; and (3) the order striking the opinion testimony of plaintiff's treating oncologist Dr. Cho that if the cancer mass was stage 1, instead of stage 2, plaintiff would not have needed radiation therapy.

¶ 31                                    II. ANALYSIS

¶ 32    On appeal, plaintiff's brief contained five issues that were listed as follows: (1) there was adequate foundation for Dr. Schwartz's opinion; (2) the pretrial exclusion of testimony—that it was more likely than not that plaintiff's cancer was stage I, instead of stage II, based on speculation—was an abuse of discretion; (3) the pretrial exclusion of opinions held by one or more physician—based upon the evidence in the record and a reasonable degree of medical certainty as being more likely than not that a stage I breast cancer does not require radiation therapy—was an abuse of discretion; (4) the discovery sanction imposed against plaintiff barring Dr. Sherer's testimony had no significant effect on Dr. Sherer's permissible testimony; and (5) the trial court's pretrial exclusion of expert testimony about the likely stage of breast cancer and treatment options in 2014 as opposed to 2015 severely prejudiced plaintiff rendering him unable to prove any act or omission of defendant caused any injury to the plaintiff. Defendant disputed all of plaintiff's arguments and further argued that issues were not properly preserved due to the lack of any offer of proof. Plaintiff disputes the necessity of any offer of proof. Therefore, before we address the arguments, we must first determine whether plaintiff properly preserved the issues raised on appeal.

¶ 33    Proper preservation of issues on appeal requires adherence to statutes, supreme court rules, and additional guidelines set forth in case law; here we address those relevant to this appeal. Section 2-1202 of the Code of Civil Procedure addresses posttrial motions in jury trials. 735 ILCS 5/2-1202 (West 2024). Section 2-1202(b) states that "[r]elief desired after trial in jury cases ***

16

must be brought in a single post-trial motion." *Id.* § 2-1202(b). "The post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief." *Id.* If no posttrial motion is filed, "[a]ny party who fails to seek a new trial in his or her post-trial motion, either conditionally or unconditionally, as herein provided, waives the right to apply for a new trial, except in cases in which the jury has failed to reach a verdict." *Id.* § 2-1202(e). Similarly, Illinois Supreme Court Rule 366 states that in jury cases, "[a] party may not urge as error on review of the ruling on the party's post-trial motion any point, ground, or relief not specified in the motion." Ill. S. Ct. R. 366(b)(2)(iii) (eff. Feb. 1, 1994). Accordingly, any issue raised on appeal must be contained within the posttrial motion.

¶ 34    Additionally, certain trial court actions require additional acts of preservation. "A motion *in limine* is a 'pretrial motion that seeks an order excluding inadmissible evidence and prohibiting questions concerning such evidence, without the necessity of having the questions asked and objections thereto made in front of the jury.' " *Epstein v. Davis*, 2017 IL App (1st) 170605, ¶ 23 (quoting *People v. Williams*, 188 Ill. 2d 365, 368 (1999)). As explained in *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002):

> "When a trial court excludes evidence, no appealable issue remains unless a formal offer of proof is made. The failure to do so results in a waiver of the issue on appeal. The purpose of an offer of proof is to inform the trial court, opposing counsel, and a reviewing court of the nature and substance of the evidence sought to be introduced. However, an offer of proof is not required where it is apparent that the trial court clearly understood the nature and character of the evidence sought to be introduced."

17

¶ 35 Additionally, a trial court's ruling on the motion *in limine* is insufficient, by itself to preserve an issue for review. *Simmons v. Garces*, 198 Ill. 2d 541, 569 (2002). This is because the trial court's initial ruling is interlocutory and remains subject to reconsideration by the court throughout the trial. *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 40 (2010). When a motion *in limine* is granted, and the proposed evidence is limited as seen here, in addition to providing an offer of proof as to the removed evidence, the opponent must also revisit the prior ruling when the evidence is offered at trial to preserve the issue for appellate review. *Id.* Further, as noted above, in addition to the offer of proof and a timely motion or objection at trial, the issue must also be raised in the posttrial motion, or the issue is forfeited on review. *Calabrese v. Benitez*, 2015 IL App (3d) 130827, ¶ 17 (citing *People v. Johnson*, 218 Ill. 2d 125, 138 (2005) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988))). "Generally, arguments not raised before the trial court are forfeited and cannot be raised for the first time on appeal." *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 (citing *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1109 (2006)). With these concepts in mind, we now address the issues raised by plaintiff on appeal.

¶ 36                    1. Foundation for Dr. Schwartz's Opinion

¶ 37 Plaintiff argues that a sufficient foundation for Dr. Schwartz's opinion was presented and claims this issue arose, and Dr. Schwartz's testimony was stricken, based on the trial court's October 5, 2023, ruling on motion *in limine* No. 45. We note, however, that the court's ruling on motion *in limine* No. 45 regarded Dr. Sherer's proposed live testimony, not Dr. Schwartz's evidence deposition testimony. However, even if the court's ruling on motion *in limine* No. 45 had been based on Dr. Schwartz's testimony, no contemporaneous objection related to the stricken testimony—required to preserve the issue for review for motions *in limine*—was presented when Dr. Schwartz's testimony was presented at the trial. See *Cetera*, 404 Ill. App. 3d at 40.

18

¶ 38    Contrary to plaintiff's argument, the redacted portions of Dr. Schwartz's testimony stemmed from the trial court's rulings on the objections at the November 3, 2023, hearing. No objection was raised regarding foundation at the trial when Dr. Schwartz's redacted testimony was read to the jury, and the sufficiency of the foundation for Dr. Schwartz's testimony was never raised as an issue in the posttrial motion. See *Mabry*, 2012 IL App (1st) 111464, ¶ 15. Thus, the issue was inadequately preserved in the trial court. As such, we find that plaintiff forfeited the issue for appellate review.

¶ 39        2. Pretrial Exclusion Based on the Stage of Plaintiff's Cancer in 2014

¶ 40    Plaintiff's second issue contends that the pretrial exclusion of expert opinions based on the staging of his breast cancer was an abuse of discretion. Generally, evidentiary motions, including those made *in limine*, are directed to the trial court's sound discretion, and the reviewing courts will not disturb a trial court's evidentiary rulings absent an abuse of discretion. *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). "The threshold for finding an abuse of discretion is high" and the standard is only met where "it can be said that no reasonable man would take the view adopted by the court." *Id.*

¶ 41    Here, plaintiff's arguments are directed to testimony from Drs. Schwartz and Sherer; however, no citation to the record is provided as to when the trial court struck the testimony, except to state that it was "stricken prior to trial." This nuance is critical to determining whether the issue was properly preserved. Review of the record reveals that the motion *in limine* that addressed this issue was not No. 45. The motion *in limine* addressing this issue was motion *in limine* No. 43 which only involved Dr. Sherer's testimony.

¶ 42    As noted above, Dr. Schwartz's testimony was stricken at the November 3, 2023, hearing when the parties were addressing the objections raised during her evidence deposition. At trial,

19

plaintiff made no contemporaneous objection related to the redacted testimony. Further, while plaintiff's posttrial motion addressed why Dr. Schwartz's opinion should not have been stricken based on the size or characterization of plaintiff's mass, plaintiff did not include any rulings related to the November 3, 2023, hearing, in his notice of appeal. Accordingly, plaintiff's issue related to Dr. Schwartz's testimony was inadequately preserved.

¶ 43     Plaintiff's argument regarding Dr. Sherer is equally uncompelling. Plaintiff claims that the "testimony of Dr. Sherer was also stricken prior to trial" as being speculative. We find plaintiff's statement erroneous as to the size and classification of plaintiff's cancerous mass. As noted above, this issue was contained in motion *in limine* No. 43, not No. 45. The trial court specifically stated that it would reserve ruling on motion *in limine* No. 43 until the relevant evidence was submitted at trial. While the trial court addressed this issue with regard to Dr. Schwartz's evidence deposition on November 3, 2023, Dr. Sherer was providing live testimony and therefore none of his proposed testimony was stricken at that time. Dr. Sherer's testimony on this issue was eliminated only after the discovery sanction was imposed at trial at which time the court limited Dr. Sherer's testimony to the "standard of care."

¶ 44     We also find that plaintiff's claim that the trial court "rejected medical opinions" and "substituted his own opinion" despite having "no medical training" inaccurate. Notably, plaintiff "accepted" the trial court's sanction limiting Dr. Sherer's testimony when the sanction was imposed. Plaintiff was then provided, and accepted, an opportunity to present an offer of proof regarding Dr. Sherer's live testimony. However, the following day, plaintiff intentionally declined to present the offer of proof as to the size and classification of plaintiff's cancerous mass. Accordingly, no opinion by Dr. Sherer related to causation was presented on the issue of the mass

20

size and classification at trial and no ruling on the motion *in limine* addressing this topic was issued due to the sanction.

¶ 45　An issue is rendered moot when the issue presented in the trial court no longer exists "because intervening events have rendered it impossible for the reviewing court to grant the complaining party effectual relief." *In re India B*., 202 Ill. 2d 522, 542 (2002) (citing *In re Tekela*, 202 Ill. 2d 282, 292-93 (2002); *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997)). "Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Jonathan P*., 399 Ill. App. 3d 396, 400 (2010) (citing *In re Barbara H*., 183 Ill. 2d 482, 491 (1998)).

¶ 46　Here, the trial court's discovery sanction imposed at trial limiting Dr. Sherer's opinion to the standard of care was an intervening event that precluded any ruling on motion *in limine* No. 43 at trial. The issue was rendered moot due to the plaintiff's failure to present an offer of proof as to Dr. Sherer's live testimony, failure to include the sanction in the posttrial motion, and failure to raise the sanction as an issue on appeal. " 'As a general rule, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided.' " *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10 (quoting *In re Barbara H*., 183 Ill. 2d 482, 491 (1998)). As this issue was not properly preserved and is moot, we decline to address plaintiff's argument as to Dr. Sherer on this issue.

¶ 47　3. Pretrial Exclusion Based on Stage I Cancer Requiring Radiation Therapy

¶ 48　Plaintiff next argues that the trial court's pretrial ruling "of opinions held by one or more medical doctors" related to speculation in motion *in limine* No. 45 was an abuse of discretion. The

argument on appeal includes the exclusions of testimony by Drs. Schwartz, Cho, and Sherer. However, the trial court's ruling on motion *in limine* No. 45 was limited to Dr. Sherer and stated, "Dr. Sherer may not offer an opinion that radiation therapy would not have been recommended if Plaintiff's mass was treated in 2014." As stated above, this issue with respect to Dr. Sherer is moot where the trial court issued the discovery sanction limiting his testimony to the standard of care. Plaintiff's failure to provide an offer of proof on this testimony, include the sanction as an issue in either the posttrial motion or on appeal renders the trial court's ruling moot and further reveals the severity of the unpreserved issue. *Commonwealth Edison Co.*, 2016 IL 118129, ¶ 10

¶ 49    Further, while plaintiff attempts to include Dr. Cho and Dr. Schwartz's testimony on this issue, the trial court's findings related to speculation were not part of motion *in limine* No. 45 but stemmed from the November 3, 2023, pretrial rulings on objections presented during their evidence depositions. Notably, while the order striking Dr. Cho's testimony was included in the notice of appeal, no objection as to the November 3, 2023, rulings was presented during the trial and the stricken portion of Dr. Cho's testimony was not included as part of this issue in plaintiff's posttrial motion. For these reasons, we find that any argument related to Dr. Cho and Dr. Schwartz's testimony on this issue was insufficiently preserved.

¶ 50                4. Discovery Sanction Related to Dr. Sherer

¶ 51    Sanctions have a dual purpose: (1) "to combat abuses of the discovery process" and (2) "maintain the integrity of the court system." *Locasto v. City of Chicago*, 2014 IL App (1st) 113576, ¶ 27 (citing *Smith v. P.A.C.E.*, 323 Ill. App. 3d 1067, 1075 (2001)). "A sanction should be tailored to promote discovery, not punish a dilatory party." *Id.* (citing *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 68 (1995)). "To the maximum extent that is practicable, sanctions should be customized to address the nature and extent of the harm while prescribing a cure to the specific

22

offense." *Id.* Typically, the imposition of sanctions for discovery violations is reviewed under an abuse of discretion standard. *Id.* ¶ 26. When determining whether a reviewing court abused its discretion the reviewing court considers the

"(1) surprise to the adverse party; (2) the prejudicial effect of the proffered evidence; (3) the nature of the evidence being sought; (4) diligence of the adverse party in seeking discovery; (5) timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the evidence." *Id.*

"[N]o single factor controls" and each case "presents a unique factual scenario that bears on the propriety of a particular sanction." *Id.*

¶ 52     Here, plaintiff argues that the sanction was irrelevant. We disagree. Plaintiff never disputed and indeed, fully accepted, the trial court's discovery sanction related to Dr. Sherer's testimony. Accordingly, no review of the trial court's sanction is necessary, and this court will presume the sanction was warranted. More importantly, there was no pretrial ruling as to whether Dr. Sherer's testimony on the size and classification of plaintiff's tumor was speculative because the trial court declined to rule on the issue until evidence was presented at trial. Therefore, Dr. Sherer's testimony regarding the size and classification of plaintiff's tumor remained presentable at trial until the trial court issued the discovery sanction. It was only plaintiff's refusal to present any offer of proof as to Dr. Sherer's testimony on the size and classification of plaintiff's tumor and failure to contest the sanction, that rendered the issue moot. Therefore, we disagree with plaintiff's contention that the sanction was irrelevant.

¶ 53          5. Pretrial Exclusion Causing Severe Prejudice to Plaintiff

¶ 54     Plaintiff's remaining issue argues that the trial court's pretrial rulings excluding evidence rendered it impossible for plaintiff to prove his case. In response, defendant argues, citing *Simmons*

*v. Garces*, 198 Ill. 2d 541, 555 (2002), that plaintiff is precluded from showing prejudice because the jury returned a general verdict, and no special interrogatory was requested. However, inconsistencies between a general verdict and a special interrogatory are not the only reason a general verdict may be overturned.

¶ 55    An alternative reason for granting a motion for a new trial includes prejudice in presenting a case due to evidentiary rulings. *Vanoosting v. Sellars*, 2012 IL App (5th) 110365, ¶ 25. An error in exclusion of evidence requires reversal for a new trial if the party was prejudiced or the trial was materially affected by the exclusion. *Id.* Plaintiff relies on this avenue and cites five cases in support of its argument. Typically, we review the trial court's decision to deny a new trial for an abuse of discretion. *Id.* ¶ 22.

¶ 56    In the case at bar, the excluded material included testimony related to the size and characterization of plaintiff's cancerous mass and whether radiation therapy would have been required had treatment been started in 2014. As stated above, this court is unable to address the merits of plaintiff's claims of error stemming from excluded evidence due to plaintiff's failure to properly preserve the issues on appeal, or, alternatively, appeal the sanction that undermined the evidence that might have more fully developed the causation evidence at trial. As a result of plaintiff's forfeiture of the evidentiary issues, this court is precluded from considering whether the trial court abused its discretion in denying plaintiff's motion for a new trial based upon a claim of prejudicial error in the exclusion of that evidence. Accordingly, we affirm the trial court's judgment.

¶ 57                                    III. CONCLUSION

¶ 58    For the above-stated reasons, we affirm the trial court's judgment.

¶ 59    Affirmed.